**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 08 - 20440 - CR - GOLD

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 287
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 2
18 U.S.C. § 982

McALILEY

**UNITED STATES OF AMERICA**

**vs.**

**CARLOS BENITEZ,**
**LUIS BENITEZ,**
**JOSE BENITEZ,**
**and**
**THOMAS MCKENZIE,**



FILED by _____ D.C.

MAY 2 2 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

                    **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment,

1.      The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     "Part B" of the Medicare program paid Medicare providers and suppliers for covered goods and services, including medically necessary Human Immunodeficiency Virus ("HIV") infusion therapy, that were provided and ordered by physicians, clinics, and other qualified health care providers. Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including HIV infusion therapy claims.

4.     Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5.     Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

### HIV Infusion Clinics and Defendants

6.     AH Medical Office, Inc. ("AH Medical") was a Florida corporation, purportedly doing business at 8300 SW 8th Street, Suite 105, Miami, Florida. AH Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around December 2001 through in or around October 2002, approximately $2.1 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at AH Medical.

- 2 -

7. Advanced Medical Rehabilitation Center, Inc. ("Advanced Medical") was a Florida corporation, purportedly doing business at 601 SW 57th Avenue, Miami, Florida. Advanced Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around February 2002 through in or around November 2003, approximately $10.6 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Advanced Medical.

8. Best Medi Corp. ("Best Medi") was a Florida corporation, purportedly doing business at 2912 SW 27th Avenue, Miami, Florida. Best Medi was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around January 2003 through in or around June 2003, approximately $18.9 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Best Medi.

9. Physician's Health Med-Care ("PHMC") was a Florida corporation, purportedly doing business at 140-142 NE 1st Avenue, Hallandale, Florida. PHMC was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around January 2003 through in or around March 2004, approximately $1.7 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at PHMC.

10. Physician's Med-Care, Inc. ("PMC") was a Florida corporation, purportedly doing business at 8150 SW 8th Street, Miami, Florida. PMC was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around August 2002 through in or around February 2004, approximately $24.5 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at PMC.

11. Saint Jude Rehab Center, Inc. ("Saint Jude") was a Florida corporation, purportedly doing business at 330 SW 27th Avenue, Suite 402, Miami, Florida. Saint Jude was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around July 2003 through in or around November 2003, approximately $11 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Saint Jude.

12.     Global Med-Care Corp. ("Global Med-Care") was a Florida corporation, purportedly doing business at 2541 SW 27th Avenue, Suite 301, Miami, Florida. Global Med-Care was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around April 2003 through in or around November 2003, approximately $10.9 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Global Med-Care.

13.     CNC Medical Corp. ("CNC Medical") was a Florida corporation, purportedly doing business at 7840 SW 121st Street, Miami, Florida. CNC Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around November 2002 through in or around April 2004, approximately $6.8 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at CNC Medical.

14.     G&S Medical Centers, Inc. ("G&S Medical") was a Florida corporation, purportedly doing business at 7303 W. Flagler Street, Miami, Florida. G&S Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around May 2003 through in or around January 2004, approximately $14 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at G&S Medical.

15.     Karla Medical Services, Inc. ("Karla Medical") was a Florida corporation, purportedly doing business at 453 W. 40th Place, Hialeah, Florida. Karla Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around June 2003 through in or around August 2003, approximately $5 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Karla Medical.

16.     Best Medicare Center, Inc. ("Best Medicare") was a Florida corporation, purportedly doing business at 300 SW 3rd Street, Dania, Florida. Best Medicare was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around July 2003 through in or around December 2003, approximately $9.3 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at Best Medicare.

17.   Defendant **CARLOS BENITEZ**, a resident of Miami-Dade County, Florida, was an owner and operator of AH Medical, Advanced Medical, Best Medi, PHMC, PMC, Saint Jude, Global Med-Care, CNC Medical, G&S Medical, Karla Medical, and Best Medicare. As part of the scheme, **CARLOS BENITEZ** would, among other things, refer Medicare beneficiaries to the above clinics for the purpose of submitting false and fraudulent HIV infusion therapy claims to the Medicare program, direct that those Medicare beneficiaries be paid kickbacks to induce them to represent that they received legitimate services at the clinics, and direct defendant **THOMAS MCKENZIE** to train the physicians in how to make it appear that legitimate medical services were being rendered at the clinics. Collectively, the clinics at which **CARLOS BENITEZ** was an owner and operator submitted approximately $110 million in false and fraudulent claims to the Medicare program for HIV infusion services that were either not rendered or were medically unnecessary.

18.   Defendant **LUIS BENITEZ**, a resident of Miami-Dade County, Florida, was an owner and operator of AH Medical, Advanced Medical, Best Medi, PHMC, PMC, Saint Jude, Global Med-Care, CNC Medical, G&S Medical, Karla Medical, and Best Medicare. As part of the scheme, **LUIS BENITEZ** would, among other things, refer Medicare beneficiaries to the above clinics for the purpose of submitting false and fraudulent HIV infusion therapy claims to the Medicare program, direct that those Medicare beneficiaries be paid kickbacks to induce them to represent that they received legitimate services at the clinics, and direct **THOMAS MCKENZIE** to train the physicians in how to make it appear that legitimate medical services were being rendered at the clinics. Collectively, the clinics at which **LUIS BENITEZ** was an owner and operator submitted approximately $110 million in false and fraudulent claims to the Medicare program for HIV infusion services that were not rendered and services that were medically unnecessary.

19.   Defendant **JOSE BENITEZ**, a resident of Miami-Dade County, Florida, was an owner and operator of Advanced Medical.   **JOSE BENITEZ** caused the submission of approximately $10 million in false and fraudulent claims to the Medicare program for HIV infusion services that were not rendered and services that were medically unnecessary.

- 5 -

20.     Defendant **THOMAS MCKENZIE**, a resident of Miami-Dade County, was a Physician's Assistant at HIV infusion clinics owned and operated by **CARLOS BENITEZ, LUIS BENITEZ,** and **JOSE BENITEZ**. At those clinics, **THOMAS MCKENZIE** was responsible for training physicians and providers in how to make it appear that legitimate and appropriate medical services were being provided at the clinic, as well as overseeing the documentation of services to make it appear that the services were actually rendered and medically necessary.

## COUNT 1
### Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 20 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      From in or around January 2001, through in or around November 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARLOS BENITEZ,
LUIS BENITEZ,
JOSE BENITEZ,
and
THOMAS MCKENZIE,**

and others known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

   a.      to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.     to make and present claims upon and against the United States Department of Health and Human Services, a department and agency of the United States, for purportedly medically necessary HIV infusion therapy medications, knowing such claims to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287;

c.     to knowingly and willfully offer and pay any remuneration, including cash kickbacks and bribes, directly and indirectly, overtly and covertly, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, service, and item for which payment may be made in whole and in part by Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for **CARLOS BENITEZ, LUIS BENITEZ, JOSE BENITEZ, THOMAS MCKENZIE,** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, the payment of kickbacks, and the true owners of the clinics they owned and controlled; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which **CARLOS BENITEZ, LUIS BENITEZ, JOSE BENITEZ, THOMAS MCKENZIE** and their co-conspirators, known and unknown to the Grand Jury, sought to accomplish the objects and purpose of the conspiracy included, among other things, as follows:

4.      **CARLOS BENITEZ** and **LUIS BENITEZ** would retain a medical biller to prepare the submission of false and fraudulent claims for HIV infusion services to the Medicare program at AH Medical, a clinic directly owned by **LUIS BENITEZ**.

5.      **CARLOS BENITEZ** and **LUIS BENITEZ** would hire physicians to make it appear that AH Medical was a legitimate HIV infusion therapy clinic.

6.      **CARLOS BENITEZ** and **LUIS BENITEZ** would direct employees of AH Medical to pay cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents at AH Medical stating that they had received the treatments that were billed to Medicare, when those treatments were not provided and were not medically necessary.

7.      **CARLOS BENITEZ, LUIS BENITEZ,** and their co-conspirators, known and unknown to the Grand Jury, would cause the submission of approximately $2.1 million in claims to the Medicare program for medically unnecessary services and for services that were never rendered at AH Medical.

8.      After reimbursements from Medicare were deposited in AH Medical's bank accounts, **CARLOS BENITEZ** and **LUIS BENITEZ** would cause the transfer of approximately $980,000 to **CARLOS BENITEZ**, approximately $900,000 to **LUIS BENITEZ**, approximately $180,000 to sham marketing and management companies owned and controlled by **CARLOS BENITEZ, LUIS BENITEZ,** and **JOSE BENITEZ,** and approximately $46,000 to other HIV infusion clinics owned and operated by **CARLOS BENITEZ** and **LUIS BENITEZ**.

9.      In approximately September 2002, after Medicare sent a suspension letter to AH Medical, suspending the clinic's ability to submit claims to the Medicare program, **CARLOS BENITEZ** and **LUIS BENITEZ** would cease using AH Medical's Medicare provider number. Instead, **CARLOS BENITEZ** and **LUIS BENITEZ** would direct the biller to use another provider number, associated with a physician at AH Medical, for the clinic's future fraudulent billing, and would do so for approximately two months.

10.     **JOSE BENITEZ** would serve as a direct owner and president of Advanced Medical, and  would arrange for the clinic to begin billing for HIV infusion services in or about March 2002.

11.     **JOSE BENITEZ** would hire a physician and **THOMAS MCKENZIE** to make it appear that Advanced Medical was a legitimate HIV infusion therapy clinic.

12.     **JOSE BENITEZ** would direct employees of Advanced Medical to pay cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents at Advanced Medical stating that they had received the treatments that were billed to Medicare, when those treatments were not provided and were not medically necessary.

13.     **THOMAS MCKENZIE** would meet with HIV patients and physicians at Advanced Medical and authorize and request numerous procedures without regard to the medical necessity of those procedures.

14.     **JOSE BENITEZ, THOMAS MCKENZIE**, and their co-conspirators, known and unknown to the Grand Jury, would cause the submission of approximately $10 million in claims to the Medicare program for services that were not provided and for services that were not medically necessary at Advanced Medical.

15.     After reimbursements from Medicare were deposited in Advanced Medical's bank accounts, **JOSE BENITEZ** would cause the transfer of approximately $457,000 to himself, approximately $10,000 to **CARLOS BENITEZ**, approximately $10,000 to **LUIS BENITEZ**, approximately $90,000 to **THOMAS MCKENZIE** and companies **MCKENZIE** owned and controlled, approximately $4 million to sham marketing and management companies owned and

controlled by **JOSE BENITEZ, CARLOS BENITEZ**, and **LUIS BENITEZ**, and approximately $200,000 to other HIV infusion clinics owned and operated by **CARLOS BENITEZ** and **JOSE BENITEZ**.

16.     From in or around November 2002  through in or around November 2004, the exact dates being unknown to the Grand Jury, **CARLOS BENITEZ** and **LUIS BENITEZ** would own and operate several additional HIV infusion clinics nominally owned by other individuals, including Best Medi, PMC, PHMC, Global Med-Care, CNC Medical, G&S Medical, Karla Medical, and Best Medicare.

17.     **CARLOS BENITEZ, LUIS BENITEZ,** and their co-conspirators,  known and unknown to the Grand Jury, would cause the submission of claims to the Medicare program for HIV infusion services that were never actually provided and services that were not medically necessary, in the following approximate amounts: $18.9 million at Best Medi; $24.5 million at PMC; $1.7 million at PHMC; $10.9 million at Global Med-Care; $6.8 million at CNC Medical; $14 million at G&S Medical; $5.4 million at Karla Medical; and $9.3 million at Best Medicare.

18.     **CARLOS BENITEZ** and **LUIS BENITEZ** would refer Medicare beneficiaries to these clinics so that bills for HIV infusion treatments could be submitted to the Medicare program using the beneficiaries' names and identification numbers when, among other things, such treatments were not provided and were not medically necessary.

19.     **CARLOS BENITEZ** and **LUIS BENITEZ** would direct employees of these clinics to pay cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents stating that they had received the treatments being billed to Medicare when such treatments were not provided and were not medically necessary.

20.     **CARLOS BENITEZ** and **LUIS BENITEZ** would direct **THOMAS MCKENZIE** to train physicians and providers at these clinics how to make it appear that legitimate and appropriate medical services were being provided at the clinic, as well as to oversee the documentation of services to make it appear that the services were actually provided and the services were medically necessary.

- 10 -

21. After Medicare made payments to the bank accounts of the HIV infusion clinics at which **CARLOS BENITEZ** and **LUIS BENITEZ** were owners and operators, **CARLOS BENITEZ** and **LUIS BENITEZ** would cause the transfer of millions of dollars in proceeds to sham marketing and management companies that they and **JOSE BENITEZ** owned and controlled, and the transfer of over $1 million to **THOMAS MCKENZIE** and companies he owned and controlled.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, at Miami-Dade and Broward Counties, in the Southern District of Florida, the following overt acts, among others:

1. On or about May 9, 2001, **LUIS BENITEZ** caused to be filed Articles of Incorporation for AH Medical, listing himself as the president and registered agent of AH Medical.

2. On or about December 26, 2001, **LUIS BENITEZ** signed an agreement with R&I Billing Corp. to provide Medicare billing services for HIV infusion treatment services allegedly provided at AH Medical.

3. On or about May 23, 2001, **LUIS BENITEZ** opened a bank account at Gulf Bank for AH Medical, listing himself as an authorized signatory.

4. On or about May 30, 2003, **CARLOS BENITEZ, LUIS BENITEZ,** and **THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary J.G. at Best Medi.

5. On or about June 6, 2003, **CARLOS BENITEZ, LUIS BENITEZ,** and **THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary R.L at Best Medi.

6. On or about June 20, 2003, **CARLOS BENITEZ, LUIS BENITEZ,** and **THOMAS MCKENZIE** caused the  tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary M.A. at Best Medi.

7. On or about August 11, 2003, **CARLOS BENITEZ, LUIS BENITEZ,** and

- 11 -

**THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary M.A at Saint Jude.

8.     On or about August 11, 2003, **CARLOS BENITEZ, LUIS BENITEZ,** and **THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary R.L at Saint Jude.

9.     On or about August 22, 2003, **CARLOS BENITEZ, LUIS BENITEZ**, and **THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary P.A. at Saint Jude.

10.     On or about October 22, 2003, **JOSE BENITEZ** and **THOMAS MCKENZIE** caused the tendering of a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary R.S. at Advanced Medical.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 20 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2001, through in or around November 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARLOS BENITEZ,**
**LUIS BENITEZ,**
**JOSE BENITEZ,**
**and**
**THOMAS MCKENZIE,**

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false

- 12 -

and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for **CARLOS BENITEZ, LUIS BENITEZ, JOSE BENITEZ, THOMAS MCKENZIE**, and their co-conspirators to unlawfully enrich themselves by, among other things:  (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, the payment of kickbacks, and the true owners of the clinics they owned and controlled; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

4.     The allegations in paragraphs 4 through 21 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein as a description of the Manner and Means of this conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 3-9
### Submission of False Claims
### (18 U.S.C. §§ 287 and 2)

1.     Paragraphs 1 through 20 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, at Miami-Dade and Broward Counties, in

the Southern District of Florida, and elsewhere, the defendants,

**CARLOS BENITEZ,**
**LUIS BENITEZ,**
**JOSE BENITEZ,**
**and**
**THOMAS MACKENZIE,**

and others did cause to be made and presented to a person or officer in the civil, military, and naval

service of the United States, and to a department and agency thereof, the following claims upon and

against the United States Department of Health and Human Services, a department and agency of the

United States, knowing such claims to be false, fictitious, and fraudulent:

| Count | Defendants | Clinic | Medicare Beneficiary | On or about Claim Date | Description of Outpatient Service | Approximate Amount Paid by Medicare |
|---|---|---|---|---|---|---|
| 3 | **CARLOS BENITEZ,** <br><br> **LUIS BENITEZ,** <br><br> **THOMAS MCKENZIE** | Best Medi | J.G. | 5/30/2003 | 300 units of Rho(D) immune globulin | $4,932 |
| 4 | **CARLOS BENITEZ,** <br><br> **LUIS BENITEZ,** <br><br> **THOMAS MCKENZIE** | Best Medi | R.L. | 6/6/2003 | 300 units of Rho(D) immune globulin | $4,932 |
| 5 | **CARLOS BENITEZ,** <br><br> **LUIS BENITEZ,** <br><br> **THOMAS MCKENZIE** | Best Medi | M.A. | 6/20/2003 | 350 units of Rho(D) immune globulin | $5,754 |

| Count | Defendants | Clinic | Medicare Beneficiary | On or about Claim Date | Description of Outpatient Service | Approximate Amount Paid by Medicare |
|-------|-----------|--------|---------------------|----------------------|----------------------------------|------------------------------------|
| 6 | **CARLOS BENITEZ,** **LUIS BENITEZ,** **THOMAS MCKENZIE** | Saint Jude | M.A. | 8/11/2003 | 300 units of Rho(D) immune globulin | $4,932 |
| 7 | **CARLOS BENITEZ,** **LUIS BENITEZ,** **THOMAS MCKENZIE** | Saint Jude | R.L. | 8/11/2003 | 300 units of Rho(D) immune globulin | $4,932 |
| 8 | **CARLOS BENITEZ,** **LUIS BENITEZ,** **THOMAS MCKENZIE** | Saint Jude | P.A. | 8/22/2003 | 300 units of Rho(D) immune globulin | $4,932 |
| 9 | **JOSE BENITEZ,** **THOMAS MCKENZIE** | Advanced Medical | R.S. | 10/22/2003 | 250 units of Rho(D) immune globulin | $4,108 |

In violation of Title 18, United States Code, Sections 287 and 2.

**COUNT 10**
**Money Laundering Conspiracy**
**(18 U.S.C. § 1956(h))**

1.      From in or around January 2001, through in or around November 2004, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARLOS BENITEZ,**
**LUIS BENITEZ,**
**and**
**JOSE BENITEZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and Section 1957, to wit:

a.      to knowingly conduct a financial transaction affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.      to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

- 16 -

c.   to knowingly engage in a monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 11-13
**Money Laundering**
**(18 U.S.C. §§ 1957 and 2)**

1.   On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**CARLOS BENITEZ**
**and**
**LUIS BENITEZ,**

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity:

| Count | On or about Date | Monetary Transaction |
|-------|------------------|----------------------|
| 11 | 8/1/2003 | Check in the approximate amount of $103,540, drawn on a Saint Jude account at Intercredit Bank, made payable to "IAA Marketing," deposited into an IAA Marketing bank account at Intercredit Bank. |
| 12 | 8/15/2003 | Check in the approximate amount of $70,000, drawn on a Saint Jude account at Intercredit Bank, made payable to "BBB Management," deposited into a BBB Management bank account at Intercredit Bank. |
| 13 | 11/13/03 | Check in the approximate amount of $146,563, drawn on a Saint Jude account at Intercredit Bank, made payable to "America Consulting," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

- 17 -

## COUNTS 14-16
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(A)(i) and 2)

On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### CARLOS BENITEZ
### and
### LUIS BENITEZ,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity:

| Count | On or about Date | Financial Transaction |
|-------|------------------|------------------------|
| 14 | 6/30/2003 | Check in the approximate amount of $20,000, drawn on a PMC account at Intercredit Bank, made payable to Saint Jude, deposited into a Saint Jude bank account at Intercredit Bank. |
| 15 | 7/7/2003 | Check in the approximate amount of $50,000, drawn on a PMC account at Intercredit Bank, made payable to Best Medicare, deposited into a Best Medicare bank account at Intercredit Bank. |
| 16 | 11/18/2003 | Check in the approximate amount of $20,000, drawn on a Best Medicare account at Intercredit Bank, made payable to Advanced Medical, deposited into an Advanced Medical bank account at Intercredit Bank. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Counts 1-16 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **CARLOS BENITEZ, LUIS BENITEZ, JOSE BENITEZ**, and **THOMAS McKENZIE** have an interest pursuant to Title 18, United States Code, Section 982.

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **CARLOS BENITEZ, LUIS BENITEZ, JOSE BENITEZ**, and **THOMAS McKENZIE** for any of the health care fraud offenses charged in this Indictment, Counts 1-9, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

3.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **CARLOS BENITEZ, LUIS BENITEZ**, and **JOSE BENITEZ** for the money laundering offenses charged in this Indictment, Counts 10-16, the defendants shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property.

4.      If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

5.      If any of the property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7).

A TRUE BILL

FOREPERSON

R/ ALEXANDER ACOSTA
UNITED STATES ATTORNEY

KIRK OGROSKY
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

HANK BOND WALTHER
JOHN K. NEAL
TRIAL ATTORNEYS
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| CARLOS BENITEZ, et al., | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendants. | |
| _____/ | **Superseding Case Information:** |

**Court Division**: (Select One)

New Defendant(s)        Yes _____    No _____
Number of New Defendants
Total number of counts

|   X   | Miami | _____ | Key West | _____ |
|---|---|---|---|---|
| _____ | FTL | _____ | WPB | _____    FTP |

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:        (Yes or No)        Yes
    List language and/or dialect                Spanish

4.  This case will take     20     days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                                      (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | __X__ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | __X__ |
| V | 61 days and over | _____ | | |

6.  Has this case been previously filed in this District Court? (Yes or No)        No
    If yes:
    Judge: _____        Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?        (Yes or No)    No
    If yes:
    Magistrate Case No. _____
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____        District of _____

    Is this a potential death penalty case? (Yes or No)        No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  __X__ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes  __X__ No

_____
HANK BOND WALTHER, TRIAL ATTORNEY, DOJ
Court No. A5501101
JOHN K. NEAL, TRIAL ATTORNEY, DOJ
Court No. A5501206

*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:   CARLOS BENITEZ

**Case No**:

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty**:   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Counts #:  3-8**

Submission of False Claims

18 U.S.C. § 287

**\*Max. Penalty:**   5 years' imprisonment as to each count

**Count #:  10**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Counts #:  11-13**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty:**   10 years' imprisonment as to each count

**Counts #:  14-16**

Money Laundering

18 U.S.C. § 1956(a)(1)(A)(i)

**\*Max. Penalty:**   20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   LUIS BENITEZ

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Counts #:  3-8**

Submission of False Claims

18 U.S.C. § 287

**\*Max. Penalty:**   5 years' imprisonment as to each count

**Count #:  10**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Counts #:  11-13**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty:**   10 years' imprisonment as to each count

**Counts #:  14-16**

Money Laundering

18 U.S.C. § 1956(a)(1)(A)(i)

**\*Max. Penalty:**   20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:   JOSE BENITEZ

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Count #:  9**

Submission of False Claims

18 U.S.C. § 287

**\*Max. Penalty:**   5 years' imprisonment

**Count #:  10**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   THOMAS MCKENZIE

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Counts #:  3-9**

Submission of False Claims

18 U.S.C. § 287

**\*Max. Penalty:**   5 years' imprisonment as to each count

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**